UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| HAYWARD BAKER, INC., | ) | CIV. 10-5012-JLV |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| SHIRTTAIL GULCH ROAD | ) | |
| DISTRICT, INC., | ) | |
| | ) | |
| Defendant and Third | ) | |
| Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMERICAN TECHNICAL | ) | |
| SERVICES INC., and SHANNON | ) | |
| & WILSON, INC., | ) | |
| | ) | |
| Third Party Defendants. | ) | |

Pending before the court are motions for summary judgment filed by

Hayward Baker, Inc. ("HBI"), Shannon & Wilson, Inc. ("Shannon & Wilson"),

and American Technical Services, Inc. (ATS).

**NATURE AND PROCEDURE OF THE CASE**

After receiving above-average precipitation, Shirttail Gulch Road

District, Inc., ("Shirttail Gulch") experienced a slope failure along Shirttail

Gulch Road.  (Docket 32, ¶¶ 3, 5-7).  Shirttail Gulch retained ATS to

evaluate the area.  Id. at ¶¶ 8-9, 16.  Upon ATS's recommendation, Shirttail

Gulch hired Rogers Construction to perform an emergency slope repair.  Id.

at ¶¶ 23, 26.  This work consisted of the installation of rock trench drains.

(Docket 33-6).  The work performed by Rogers Construction was completed

on July 1, 2008.  (Docket 32, ¶ 27).

On July 2, 2008, a second slide occurred at the site.  Id. at ¶ 28.

Again, ATS was called to evaluate the area.  Id. at ¶¶ 31-32.  ATS

recommended Shirttail Gulch either develop a new route for ingress and

egress from the development or stabilize the slope through the installation

of a post tension anchor block system.  Id. at ¶ 37; Docket 33-6.  ATS

contacted HBI for estimates regarding the cost of installation of an anchor

block system.  (Docket 33-6).  Based upon the recommendation of ATS,

Shirttail Gulch sought bids from contractors for the road shaping and

embankment work, while HBI was to install the anchor system.  (Docket 32,

¶¶ 50-51, 53).

At this same time, in July of 2008, President George Bush issued a

disaster declaration for South Dakota due to the above-average precipitation

received in June of 2008.  Id. at ¶ 116.  Shirttail Gulch then became eligible

to receive assistance from the Federal Emergency Management Agency

("FEMA").  Id. at ¶¶ 116-17.  Shirttail Gulch was able to apply for FEMA

assistance for the road and slope repair in August of 2008.  Id. at ¶ 52.

FEMA, however, requested Shirttail Gulch accept competitive bids for the

work involving the anchor block system.  Id. at ¶ 54.  HBI submitted a

proposal to construct a tie-back anchor block system which was accepted by Shirttail Gulch. Id. at ¶¶ 54-58. HBI hired Shannon & Wilson, Inc. ("Shannon & Wilson") to design the tie-back anchor block system consisting of twelve anchor blocks. (Docket 21).

HBI commenced construction of the tie-back anchor block system on September 22, 2008. (Docket 32, ¶ 69). A change order was submitted on October 9, 2008, due to a greater quantity of soil needing to be removed than had been considered during the bidding process. Id. at ¶ 71. HBI completed construction of the tie-back anchor block system on October 17, 2008. Id. at ¶ 77. Though HBI had completed construction of the tie-back anchor block system, other work was still ongoing at the site including the installation of a rock buttress system. Id. at ¶¶ 78, 80, 92.

In November of 2008, after receiving between four and five feet of snow, a secondary slope failure occurred. Id. at ¶ 84. At the time of the snowfall, the slide remediation project had not been completed. Id. at ¶ 94.

In March of 2009, another slide occurred at the site. Id. at ¶ 100. ATS concluded the failure of the tie-back anchor block system was due to "*incompletion of the lower stabilization system and excessive precipitation*[.]" Id. at ¶ 109 (emphasis in original). ATS recommended a re-design of the system. See id. Proposals were then submitted to construct a soldier beam and lagging wall system. Id. at ¶¶ 110-12. Shirttail Gulch hired

CTL/Thompson to perform the geotechnical work and Coggins and Sons, Inc., ("Coggins") to perform the construction. Id. at ¶ 112.

In December of 2010, HBI requested payment from Shirttail Gulch in the amount of $197,880. Id. at ¶ 98. Shirttail Gulch has not remitted payment. Id. at ¶ 99. This action was subsequently commenced by HBI by the filing of a complaint on March 5, 2010. (Docket 1).

In response to the complaint, Shirttail Gulch filed a counterclaim against HBI alleging the tie-back anchor block system failed in November of 2008. (Docket 21). Shirttail Gulch asserts HBI was negligent in failing to request further geological testing and in its construction of the tie-back anchor block system. (Docket 6). Shirttail Gulch further claims Shannon & Wilson was negligent in failing to request further geotechnical exploration and testing and in its design of the tie-back anchor block system. (Docket 21). Shirttail Gulch also asserts a negligence claim against ATS for failing to conduct a thorough investigation of the site. (Docket 7). Currently pending before the court is a motion for summary judgment by HBI. (Docket 31). Shannon & Wilson also move for summary judgment, as does ATS. (Dockets 41 and 50).

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant "shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at 248. Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party fails to "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In determining whether summary judgment should issue,

the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson, 477 U.S. at 251-52.

### DISCUSSION

**A.     HBI's Motion for Summary Judgment**

     **1.     Economic Loss Rule**

HBI contends Shirttail Gulch is barred from recovering the damages it seeks under the economic loss rule.  (Docket 34).  Under the Uniform Commercial Code ("UCC"), "[t]he general rule is that economic losses are not recoverable under tort theories[.]"  City of Lennox v. Mitek Industries, Inc., 519 N.W.2d 330, 333 (S.D. 1994).  To determine if Shirttail Gulch's requested recovery is limited, the court must first determine whether the contract between HBI and Shirttail Gulch was a transaction contemplated by the UCC.  In this matter, the court applies the law of South Dakota, the forum state.  See Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  South Dakota has adopted the UCC.  See SDCL ch. 57A-2.

Article 2 of the UCC governs "transactions in goods."  SDCL § 57A-2-102.  Section 57A-2-105 of South Dakota Codified Law defines "goods" as

all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Chapter 57A-8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the sections on goods to be severed from realty (§ 57A-2-107).

SDCL § 57A-2-105. "When goods and services are sold together[,] . . . a special inquiry must be made." Lennox, 519 N.W.2d at 332 (citing Jandreau v. Sheesley, 324 N.W.2d 266 (S.D. 1982)). "The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom). . . ." Jandreau, 324 N.W.2d at 268.

HBI contends the contract was for the installation of a tie-back anchor block system for a fixed sum which therefore constitutes a contract for sale. (Docket 34). Shirttail Gulch contends that it is a contract for design and construction services. (Docket 68).

The contract between HBI and Shirttail Gulch contains the following provisions:

### **INTRODUCTION**

HBI has had discussion with Dave Bressler of American Technical Services, Inc. regarding the stabilization of the slope failure adjacent to

Shirt Tail Gulch Road. In order to increase the slope stability of this area, HBI is proposing to construct two rows of a tie-back anchor block system within the slope.

. . .

## SCOPE OF WORK
## TIE-BACK ANCHOR BLOCK

HBI proposes to install a total of twelve (12) anchor blocks in two rows below the existing row. The anchor blocks will be installed at approximately 15' on-center. The exact number and location of the anchors will need to be agreed upon by all parties prior to commencement of work.

The following task responsibility list is provided in order to clarify this proposal. Any item denoted as OWNER must be provided by the owner or others at no additional cost to HBI.

| | Task | Responsibility |
|---|---|---|
| 1. | Complete tie-back anchor block design and shop drawings. | HBI |
| 2. | Locate all underground utilities. HBI is specifically not responsible for damage to mis-marked or unknown utilities. Owner must obtain all necessary permits. | OWNER |
| 3. | Complete excavation in area of anchor blocks in order to install the 10' x 10' anchor blocks. Provide a 25' wide workbench for drill rig. Bench must be capable of supporting a 45,000 lb drill rig. Provide a 40' x 40' staging area near work area for storing equipment and material. | OWNER |

| Task | Responsibility |
|------|----------------|
| 4. Install pre-cast concrete anchor blocks at required locations. Install multi-strand anchors through the pre-cast concrete, slope failure soils and into the stable bedrock material. | HBI |
| 5. Provide containment area for disposal of drill and grout spoil. Ground anchor construction will generate approximately 1-2 cubic yards of soil per location. Removal and transportation of spoil to be provided by others. | OWNER |
| 6. Insert anchor into drilled hole and tremie fill and subsequently pressure grout with neat cement grout. | HBI |
| 7. Allow grout to cure for a minimum of 3 days. | HBI |
| 8. Place anchor plate over anchor, test, and lock-off anchor to desired load capacity. HBI will provide anchor plates and all necessary hardware for anchor installation. | HBI |
| 9. Complete any additional excavation to stabilize the slope. | OWNER |

(Docket 33-10; Docket 72-18).

In reviewing these provisions, the court finds HBI was tasked with designing the project, installing and constructing the earth retention system as designed, and testing the system to insure its effectiveness. HBI was to additionally provide the anchor blocks, anchor plates, and grout. The court

finds the predominant purpose of this contract "is the rendition of service, with goods incidentally involved[.]" <u>Jandreau</u>, 324 N.W.2d at 268. As a result, the court finds Shirttail Gulch is not limited to the recovery allowed by the UCC and is not precluded from seeking damages for more than economic loss.

### 2. Negligence

HBI next contends Shirttail Gulch cannot pursue a negligence claim based upon a breach of contract. (Docket 34). HBI reasons Shirttail Gulch's claim for negligence is based upon HBI's alleged failure to perform an act required under the contract and not from a duty to Shirttail Gulch which exists separate from the contract. <u>Id.</u> As a result, HBI reasons Shirttail Gulch may not proceed on its negligence claim but only on a breach of contract claim. <u>Id.</u>

"In order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury." <u>Fisher Sand & Gravel Co. v. South Dakota Dep't of Transp.</u>, 558 N.W.2d 864, 867 (S.D. 1997). The determination of "[w]hether a duty exists is a question of law[.]" <u>Id.</u> The South Dakota Supreme Court held "that negligence that consists merely in the breach of a contract will not afford grounds for a tort action by third parties and is limited under a breach of contract cause of action to the party to the contract or for whose

benefit the contract was made." Id. at 868.  However, the South Dakota

Supreme Court also held "[a] duty to use proper care may also arise from a

contractual relationship and breach of the resulting duty may give rise to

tort liability." Limpert v. Bail, 447 N.W.2d 48, 51 (S.D. 1989).  "It may be

granted that an omission to perform a contract obligation is never a tort,

unless that omission is also an omission of a legal duty." Smith v. Weber,

16 N.W.2d 537, 539 (S.D. 1944).  Thus, the court must first determine if

HBI owed a duty to Shirttail Gulch outside of its obligations under the

contract.

"In determining whether a duty exists, [the court] examine[s] whether

'a relationship exists between the parties such that the law will impose upon

the defendant a legal obligation of reasonable conduct for the benefit of the

plaintiff.' " First American Bank & Trust, N.A. v. Farmers State Bank of

Canton, 756 N.W.2d 19, 26 (S.D. 2008) (quoting Casillas v. Schubauer, 714

N.W.2d 84, 88 (S.D. 2006)).  The South Dakota Supreme Court held a duty

can be created by common law, statute, or based upon foreseeability.  See

First American, 765 N.W.2d at 26 (citations omitted).  In Kuehl v. Horner

(J.W.) Lumber Co., 678 N.W.2d 809 (S.D. 2004), the South Dakota Supreme

Court advised trial courts to look to Restatement (Second) of Torts § 324A

(1965) when determining whether a duty has been created.  Kuehl, 678

N.W.2d at 812.  Restatement (Second) of Torts § 324A (1965) provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to the liability for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a)    his failure to exercise reasonable care increases the risk of such harm, or

    (b)    he has undertaken to perform a duty owed by the other to the third person, or

    (c)    the harm is suffered because of reliance of the other or the third person upon the undertaking.

Here, HBI undertook the obligation to provide professional services to Shirttail Gulch. The failure to exercise reasonable care had the potential of increasing the risk of harm. Additionally, Shirttail Gulch and others relied upon HBI to exercise reasonable care in designing and constructing the earth retention system. While the obligation to provide an appropriate design and proper construction arose out of the contract, a duty existed to provide such services using "such skill and care ordinarily exercised by others in the same profession." Limpert, 447 N.W.2d at 51 (stating "it is generally recognized that one who undertakes to provide professional services has a duty to the person for whom the services are performed to use such skill and care ordinarily exercised by others in the same profession."). The court finds this case is the type of situation foreseen by the South Dakota Supreme Court when it said, "[a] contract may establish a relationship requiring exercise of proper care and acts or omissions in performance of such duty may give rise to a tort liability." Friedhoff v.

Engberg, 149 N.W.2d 759, 762 (S.D. 1967).  See also Mid-Western Electric.,
Inc. v. DeWild Grant Reckert & Assoc., 500 N.W.2d 250, 253-54 (S.D.
1993) (recognizing a cause of action against an architect or engineer based
upon a foreseeable harm caused by professional negligence).  Accordingly,
the court finds HBI owed a duty to Shirttail Gulch, the violation of which
gives rise to tort liability.  The court further finds a question of fact exists
as to whether that duty was breached.  Accordingly, summary judgment on
this issue is not granted.

### 3.    Breach of Contract

HBI also moves for summary judgment on Shirttail Gulch's claim of
breach of contract.  (Docket 34).  "An action for breach of contract requires
proof of an enforceable promise, its breach, and damages."  McKie v.
Huntley, 620 N.W.2d 599, 603 (S.D. 2000).  Moreover, "[t]o recover
damages for breach of contract, the loss must be clearly ascertainable in
both its nature and origin."  Id.  The party seeking damages must provide
proof of "reasonable certainty" to demonstrate its right to recovery.  See id.
"Reasonable certainty requires proof of a rational basis for measuring loss,
without allowing a jury to speculate."  Id.

HBI argues, without admitting it breached the contract, that Shirttail
Gulch has not been damaged.  (Docket 34).  First, HBI contends Shirttail
Gulch has not remitted payment, and therefore, it was left in the same

position it was in prior to the contract. Id. HBI further contends Shirttail Gulch has not provided evidence an alleged breach caused any damages. Id.

"The purpose of contract damages is to put the injured party in the same position it would have been had there been no breach." Lamar Advertising of South Dakota, Inc. v. Heavy Constructors, Inc., 745 N.W.2d 371, 376 (S.D. 2008).

South Dakota law provides:

> For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom. No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.

SDCL § 21-2-1.

In November of 2008, approximately one month after HBI left the site, an additional slope failure occurred. (Docket 32, ¶ 84). Again, in March of 2009, an additional slide occurred. Id. at ¶ 100. The deposition testimony and other exhibits in the record indicate further damage occurred to the road and the surrounding slope as a result of these events. (Docket 33-1, p. 83, ln. 22 - p. 88, ln. 19; p. 96, ln. 21 - p. 98, ln. 1; Docket 33-2, p. 71, ln. 7 - p. 72, ln. 14; p. 121, ln. 24 - p. 124, ln. 15; p. 125, lns. 17-24; Docket 33-16; Docket 33-18; Docket 51-1, p. 91, ln. 25 - p. 92, ln. 2).

HBI contends Shirttail Gulch had work to complete before the system would be fully functional. (Docket 34). Shirttail Gulch contends that the tie-back anchor block system failed not only because it was an inappropriate design for the situation but because HBI failed to construct the system in accordance with the design specifications. (Docket 68). The court finds a question of fact exists as to whether a breach of contract occurred and, if so, whether the breach of contract resulted in further damage to the road and surrounding slope.

Assuming a breach occurred, the court further finds a question of fact exists as to the extent of damages. The South Dakota Supreme Court previously declined "dictating any specific formula for calculating damages." McKie, 620 N.W.2d at 603. Rather, the Supreme Court applies a " ' reasonable certainty test concerning the proof needed to establish a right to recover damages.' " Id. (quoting Drier v. Perfection, Inc., 259 N.W.2d 496, 506 (S.D. 1977)). For instance, the Supreme Court previously approved allowing a jury to calculate damages based upon the reasonable cost of repair or the difference between the fair market value of the system as contracted and the system as it was constructed. See City of Bridgewater v. Morris, Inc., 594 N.W.2d 712, 716 (S.D. 1999). Here, damages may be only the amount left to be paid under the contract. However, the record reflects on March 24, 2009, HBI, Shannon & Wilson, and ATS met with Shirttail

Gulch. (Docket 69, p. 6, ¶¶ D and E). At that meeting it was determined a soldier pile wall was the best solution to remedy the failure of the tie-back anchor block system. Id. Under the previous holdings of the South Dakota Supreme Court, Shirttail Gulch's damages could include the cost of repair. See Morris, 594 N.W.2d at 716. Assuming a breach, a question of fact exists as to what sum would place Shirttail Gulch in the same position had no breach occurred. See Lamar, 745 N.W.2d at 376.

**B.      ATS's Motion for Summary Judgment**

ATS also moves for summary judgment on the issue of damages. (Docket 50). ATS, like HBI, contends that Shirttail Gulch's damages are capped at the amount of Shirttail Gulch's potential out-of-pocket expenses of $42,630.31.[1] As previously determined, a question of fact exists as to whether a breach occurred and, if so, the extent of damage caused by the breach. There is evidence in the record which indicates further damage to the road and surrounding slope as a result of the failure of the tie-back anchor block system. A jury must determine whether the failure of the tie-back anchor block system constitutes a breach and, if so, the amount of damages required to compensate Shirttail Gulch. The court finds summary judgment on this issue is not appropriate.

---

[1] The total cost of the tie-back anchor block system was $426,303.10. (Dockets 48, ¶ 21 and 55-13). FEMA and the State of South Dakota provided funding in the amount of $383,672.79, leaving Shirttail Gulch to provide the remaining $42,630.31. (Docket 48, ¶ 22).

## C.    FEMA Damages

HBI, Shannon & Wilson, and ATS all move for summary judgment on the issue of FEMA damages. (Dockets 31, 41, and 50). As stated previously, Shirttail Gulch is seeking reimbursement for the funding which it alleges it could have received from FEMA under the Public Works Assistance Program. (Docket 68). The parties agree that for FEMA to approve of the Coggins project, it must be shown that:

a.    The applicant is an eligible applicant;

b.    The applicant's facility was damaged by the event declared as a major disaster and is located in a county included in the President's declaration as eligible for public assistance;

c.    The work proposed by the applicant is required as a direct result of the disaster and is the applicant's responsibility; and

d.    The cost of the work is reasonable[.]

(Docket 72-43, ¶ 12). Additionally, FEMA must find the project is not an "improvement." (Docket 72-43, ¶ 15).

The parties appear to agree the first three criteria are met. (Dockets 34, 45, and 49). HBI, Shannon & Wilson, and ATS, however, contend Shirttail Gulch is unable to show the cost of the project would have been deemed reasonable by FEMA. Id. In response, Shirttail Gulch offers the testimony of Larry Coggins, the principal of Coggins, to support its claim the cost of the project was reasonable. (Dockets 64, 66, 68, and 72-4, p. 75, ln. 25 - p. 76, ln. 4). The court finds Shirttail Gulch presented sufficient

17

evidence that a genuine issue of material fact exists regarding whether the cost of the work was reasonable.

HBI, Shannon & Wilson, and ATS further contend Shirttail Gulch has not provided evidence FEMA would have determined the Coggins project was not an "improvement" or more extensive than required. (Dockets 34, 45, and 49). Shirttail Gulch, however, argues HBI, Shannon & Wilson, and ATS were negligent in the proposal, design, and construction of the tie-back anchor block system. Moreover, Shirttail Gulch proffers the testimony of Frank Holliday asserting the Coggins project should have been designed and constructed from the beginning. (Docket 63, ¶ 4 subparagraph O). Should Shirttail Gulch be successful in proving these assertions, it would be reasonable to conclude FEMA would not have deemed the Coggins project to be an "improvement" or to be a project which was more extensive than the situation required. As a result, the court finds this is an issue properly presented to the trier of fact.

**D.     Shannon & Wilson's Motion for Summary Judgment**

Shannon & Wilson also moves for summary judgment on Shirttail Gulch's claim of negligence against Shannon & Wilson. (Docket 50). As stated previously, to prove a claim of negligence, Shirttail Gulch must show Shannon & Wilson owed Shirttail Gulch a duty. Shirttail Gulch must further demonstrate the duty was breached and, as a result of the breach, it suffered damages. See Fisher, 558 N.W.2d at 868. Shannon & Wilson

allege Shirttail Gulch fails to meet its burden as it has not proffered the necessary expert testimony regarding the standard of care or the appropriateness of the design of the tie-back anchor block system.  (Docket 50).  "There is no requirement that a party produce expert testimony when the question is within a layperson's knowledge.  However, expert testimony is required to establish the standard of care for a professional unless the issue is within the common knowledge of the jury."  Luther v. City of Winner, 674 N.W.2d 339, 344 (S.D. 2004).  See also Mid-Western Elec., 500 N.W.2d at 255.  The court finds neither the standard of care for an engineer nor the knowledge necessary to determine the appropriateness of a design are within the "common knowledge" of a layperson.  The court concludes expert testimony is required.  See Luther, 674 N.W.2d at 345 (requiring plaintiff to present expert testimony to establish the professional standard of care for an engineer on a negligent design claim).

Shirttail Gulch, however, has proffered the expert testimony of Frank J. Holliday and Robin G. Dornfest to support the claim Shannon & Wilson was negligent and the design was inappropriate.  (Docket 43, ¶ 25). Shannon & Wilson moved to exclude the testimony of these experts asserting they were unqualified to testify as to the standard of care or the appropriateness of the design.  (Docket 35).  In an order dated August 8, 2012, the court determined Mr. Dornfest was qualified to testify as to the soil assessments and the impact of an earth retention system on the soil. The court, however, limited Mr. Dornfest's testimony regarding the integrity

of the tie-back anchor block system.  With regard to Mr. Holliday, the court found him qualified to opine as to the integrity of the design.  As an engineer, Mr. Holliday is also qualified to testify as to the professional standard of care owed by Shannon & Wilson.  (Docket 85).  As a result, the court finds Shirttail Gulch will offer expert testimony regarding the professional standard of care for an engineer and the appropriateness of the tie-back anchor block system, thus raising a question of material fact.  Accordingly, the court will not grant summary judgment for Shannon & Wilson on this issue.

## CONCLUSION

The court finds questions of material fact exist as to whether HBI, Shannon & Wilson, and/or ATS committed a breach of contract and/or a breach of duty.  Questions of material fact also exist as to whether such a breach resulted in damage to Shirttail Gulch and, if so, the extent of that damage.  The court further concludes questions of fact exist regarding Shirttail Gulch's request for damages for lost FEMA funding.  As a result, the court finds summary judgment is not appropriate.  Accordingly, it is hereby

ORDERED that HBI's motion for summary judgment (Docket 31) is denied.

IT IS FURTHER ORDERED that Shannon & Wilson's motion for summary judgment (Docket 41) is denied.

IT IS FURTHER ORDERED that ATS's motion for summary judgment

(Docket 50) is denied.

Dated September 10, 2012.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE